TROUTMAN PEPPER LOCKE LLP
Steven D. Allison (SBN 174491)
steven.allison@troutman.com
Christy A. Markos (SBN 322278)
christy.markos@troutman.com
Lynda B. Nguyen (SBN 340720)
Lynda.nguyen@troutman.com
100 Spectrum Center Drive, Suite 1500
Irvine, CA 92618
Telephone: 949.622.2700
Facsimile: 949.622.2739

Attorneys for Defendants
FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC.; and
FISERV, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| POLAM FEDERAL CREDIT UNION,<br><br>Plaintiff,<br><br>vs.<br><br>FISERV SOLUTIONS, LLC f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,<br><br>Defendants. | Case No. 2:26-cv-2352<br><br>**DEFENDANTS FISERV SOLUTIONS, LLC F/K/A FISERV SOLUTIONS, INC. AND FISERV, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION AND MOTION TO DISMISS PLAINTIFF POLAM FEDERAL CREDIT UNION'S COMPLAINT**<br><br>*[Filed concurrently with Notice of Motion and Motion to Dismiss; Declaration of Steven D. Allison, and [Proposed] Order]*<br><br>Date: June 22, 2026<br>Time: 1:30 p.m.<br>Courtroom: 7A<br>Judge: Hon. John F. Walter |

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 5

A. POLAM HAS NOT PLAUSIBLY ALLEGED BREACH OF ANY CONTRACTUAL OBLIGATION (CLAIMS 1–3). ........ 5

1. The Complaint Does Not Plausibly Allege That Fiserv Failed to Perform Its Obligations for Any Product or Service. ........ 6

2. POLAM's Reliance on Sections 3 and 4 of the Agreement Violates the Agreement's Plain Language. ........ 6

3. POLAM Cannot State a Claim Under Section 3. ........ 7

4. POLAM Cannot State a Claim Under Section 4(a) ........ 9

5. Fiserv's Updates to Its Products Is Not a Breach (¶¶ 128(f), 148). ........ 10

6. POLAM's Other Contract-Related Claims Fail. ........ 11

B. POLAM FAILS TO PLEAD A DTSA VIOLATION (CLAIM 6) ........ 14

C. POLAM FAILS TO PLEAD FRAUD (CLAIM 7). ........ 16

1. Polam Fails To Allege An Actionable Misrepresentation Under Rule 9(B). ........ 17

2. Polam Fails To Plead Reliance. ........ 19

3. Polam Fails To Adequately Plead Damages Resulting From The Alleged Fraud. ........ 20

D. POLAM FAILS TO PLEAD A UCL CLAIM (CLAIM 8) ........ 21

1. POLAM Fails to State a Claim Under the "Unlawful" Prong. ........ 22

2. POLAM Fails to State a "Fraudulent" Prong Claim. ........ 23

3. POLAM Fails to State an "Unfair" Prong Claim. ........ 24

V. CONCLUSION ........ 25


TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015)....................8

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
819 F. Supp. 2d 1001 (E.D. Cal. 2011)....................16

*Agile Sourcing Partners, Inc. v. Dempsey*,
2021 WL 4860693 (C.D. Cal. July 15, 2021)....................14

*Alcoa, Inc. v. Bonneville Power Admin.*,
698 F.3d 774 (9th Cir. 2012)....................14

*In re AMR Corp.*,
730 F.3d 88 (2d Cir. 2013)....................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5

*Baba v. Hewlett-Packard Co.*,
No. C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010)....................22

*Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*,
353 F. Supp. 3d 1070 (D. Colo. 2018)....................15

*Bodenburg v. Apple Inc.*,
146 F.4th 761 (9th Cir. 2025)....................6

*Bower v. AT&T Mobility, LLC*,
196 Cal. App. 4th 1545 (2011)....................17

*Brainbuilders LLC v. EmblemHealth, Inc.*,
2022 WL 3156179 (S.D.N.Y. Aug. 8, 2022)....................6

*Cherokee Owners Corp. v. DNA Contracting*,
LLC, 96 A.D.3d 480 (N.Y. App. Div. 2012)....................13

*CleanFish, LLC v. Sims*,
2020 WL 1274991 (N.D. Cal. Mar. 17, 2020)....................15, 16

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

*Cole v. Macklowe*,
99 A.D.3d 595 (N.Y. App. Div. 2012) .......... 9

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013) .......... 13

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 5

*Doe v. Grindr Inc.*,
709 F. Supp. 3d 1047 (C.D. Cal. 2023), *aff'd*, 128 F.4th 1148 (9th Cir. 2025) .......... 5

*Drum v. San Fernando Valley Bar Assn.*,
182 Cal. App. 4th 247 (2010) .......... 25

*Edwards v. Sequoia Fund, Inc.*,
938 F.3d 8 (2d Cir. 2019) .......... 5, 12

*Gillen v. Town of Hempstead Town Bd.*,
63 Misc. 3d 653 (N.Y. Sup. Ct. 2019) .......... 10

*Giostar Therapy, LLC v. Bioscience Americas LLC*,
2019 WL 7841723 (D. Ariz. Apr. 22, 2019) .......... 16

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) .......... 10

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*,
390 F. Supp. 2d 479 (D. Md. 2005) .......... 8

*Johnson v. Fed. Home Loan Mortg. Corp.*,
793 F.3d 1005 (9th Cir. 2015) .......... 8, 11

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 23

*Khan v. CitiMortgage, Inc.*,
975 F. Supp. 2d 1127 (E.D. Cal. 2013) .......... 17, 20

*Lozano v. AT & T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007) .......... 26

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 440 (2005) .......... 22

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

*Med. Diagnostic Lab'ys, L.L.C. v. Protagonist Therapeutics, Inc.*,
298 F. Supp. 3d 1241 (N.D. Cal. 2018)....................11

*Meda AB v. 3M Co.*,
969 F. Supp. 2d 360 (S.D.N.Y. 2013)....................8

*Nationwide Equip. Co. v. Allen*,
2005 WL 1228360 (M.D. Fla. May 24, 2005)....................16

*Nazemi v. Specialized Loan Servicing, LLC*,
637 F. Supp. 3d 856 (C.D. Cal. 2022)....................24, 25

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)....................3

*Owners Ins. Co. v. Parsons*,
610 F. App'x 895 (11th Cir. 2015)....................14

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
96 F.3d 1151 (9th Cir. 1996)....................14

*Piccirilli v. Yonaty*,
204 A.D.3d 1322 (N.Y. App. Div. 2022)....................8

*Republican Nat'l Comm. v. Google LLC*,
742 F. Supp. 3d 1099 (E.D. Cal. 2024)....................25

*Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*,
2023 WL 6373884 (C.D. Cal. Aug. 24, 2023)....................15

*Roldan v. Callahan & Blaine*,
219 Cal. App. 4th 87 (2013)....................21

*Romanoff v. Romanoff*,
148 A.D.3d 614 (N.Y. App. Div. 2017)....................13

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013)....................5, 18, 20

*Satvati v. Allstate Northbrook Indem. Co.*,
634 F. Supp. 3d 792 (C.D. Cal. 2022)....................6

*Schmitt v. SN Servicing Corp.*,
No. 21-CV-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021)....................23

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

*Sipe v. Countrywide Bank*,
690 F. Supp. 2d 1141 (E.D. Cal. 2010) .......... 21

*T.F. Demilo Corp. v. E.K. Const. Co.*,
207 A.D.2d 480 (N.Y. App. Div. 1994) .......... 13

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014) .......... 18

*Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*,
No. 8:23-CV-01300-FWS-DFM, 2024 WL 1684482 (C.D. Cal. Mar. 13, 2024) .......... 24

*Trepp, LLC v. McCord Dev., Inc.*,
100 A.D.3d 510 (N.Y. App. Div. 2012) .......... 12

*Trustpilot Damages LLC v. Trustpilot Inc.*,
2022 WL 2124865 (2d Cir. June 13, 2022) .......... 12

*Unified Grocers, Inc. v. VM Int'l, Inc.*,
2020 WL 5370621 (C.D. Cal. Apr. 8, 2020) .......... 17

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .......... 8

*WestLB AG v. BAC Fla. Bank*,
912 F. Supp. 2d 86 (S.D.N.Y. 2012) .......... 13

*Yamauchi v. Cotterman*,
84 F. Supp. 3d 993 (N.D. Cal. 2015) .......... 17, 18

*Yastrab v. Apple Inc.*,
173 F. Supp. 3d 972 (N.D. Cal. 2016) .......... 18, 19

*Yi v. Circle K Stores, Inc.*,
258 F. Supp. 3d 1075 (C.D. Cal. 2017) .......... 22

**Statutes**

18 U.S.C. § 1839(3)(B) .......... 15, 16

18 U.S.C. § 1839(5) .......... 15

Cal. Civ. Code § 1798.81.5 .......... 23, 25

N.Y. Gen. Oblig. Law § 5-903(2) .......... 11

**Other Authorities**

*Black's Law Dictionary* (12th ed. 2024) .......... 8

Rule 8 .......... 6

Rule 9(b) .......... *passim*

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

## I. INTRODUCTION

This is a contractual dispute between a financial institution, Plaintiff POLAM Federal Credit Union ("POLAM"), and its technology provider, Defendant Fiserv Solutions, LLC ("Fiserv"). For nearly two decades, POLAM has contracted with Fiserv to receive account processing and related backend services used to operate the credit union. The parties' current relationship is governed by a 2014 Master Agreement, as amended, that expires in 2030 (the "Agreement"). Although POLAM continues to use Fiserv's services every day, it decided years ago to stop paying its invoices in full. POLAM seemingly no longer desires these services, or at least no longer desires to pay for them.

POLAM now brings claims for breach of contract, fraud, misappropriation of trade secrets, and a host of equitable remedies. The Complaint fashions this dispute as some form of data breach case, but fails to allege that any data breach or security incident impacting POLAM's customers has actually occurred. The theory underlying all of its claims is fairly simple: POLAM is dissatisfied with the security features it elected under the Agreement, and believes Fiserv is required to provide to POLAM the exact same security protections Fiserv provides for its own data, irrespective of the specific security protections POLAM contracted to receive.

POLAM's claims are foreclosed by the plain language of the Agreement. Fiserv's obligations as to security and authentication features of the products it provides to POLAM are set forth in schedules and exhibits governing such products. Yet the Complaint does not identify a single contractual provision mandating the forms of security that POLAM now demands. That is because no such provision exists. POLAM attempts to create non-existent obligations from a standard, mutual confidentiality provision and a general requirement that Fiserv maintain an information security plan by distorting the plain meaning of these unambiguous provisions and ignoring basic principles of contract interpretation. Incredibly, POLAM also contends that Fiserv has breached the Agreement by updating the

security features of the online banking products that POLAM alleges are insecure.

POLAM's Defend Trade Secrets Act (DTSA) claim fails because the categories of member information it identifies do not qualify as trade secrets, and POLAM's allegations of misappropriation amount to nothing more than Fiserv performing its contractual obligations.

POLAM's fraud claim fares no better. POLAM asserts only vague and conclusory allegations about certain documents and general statements, which do not meet the heightened pleading requirements. Nor can POLAM plausibly plead justifiable reliance on any purported extra-contractual representations. Indeed, three of the four dated documents POLAM identifies as containing the alleged misrepresentations did not even exist when POLAM executed the Agreement in 2014, or when it extended the Agreement through 2030 in 2022. POLAM also fails to identify when it received the alleged misrepresentations or how they influenced POLAM's decision to enter into the Agreement or any subsequent amendment. POLAM further fails to plead resulting damages from this alleged fraud.

Finally, POLAM's claim under California's Unfair Competition Law ("UCL") likewise fails. The alleged damages POLAM pleads are not recoverable as a matter of law. Further, POLAM fails to plausibly plead all the requirements of a claim under either the unlawful, fraudulent, or unfair prongs of the UCL.

For these reasons, and as set forth more fully below, Fiserv respectfully requests the Court dismiss POLAM's Complaint in its entirety.

## II. FACTUAL BACKGROUND

POLAM has been a Fiserv client for over a decade. (Compl. ¶ 24). On June 1, 2014, the parties executed the Agreement, under which Fiserv agreed to provide account processing and related services. (Compl. ¶ 24; Ex. A, Appl. to Seal).[1] In

---

[1] POLAM initially filed a redacted version of the Agreement (Exhibit 2 to the Complaint) at ECF 35-1. Fiserv has since proposed fewer redactions to the same

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

exchange, POLAM agreed to pay license, maintenance, and professional development fees. The Agreement had an initial term of ten years, but was amended in 2022 to extend the initial term through 2030. (Ex. A, Appl. to Seal, at 62). The Agreement is structured so that clients such as POLAM may choose or reject individual offerings as indicated by schedules and exhibits to the Agreement. (*Id.* at 6, § 1). With its exhibits, the Agreement:

- reflects a comprehensive agreement delineating the parties' obligations, risk allocations, and liability limitations;
- includes specific warranties regarding Fiserv's products and services;
- expressly waives POLAM's reliance on unincluded representations or warranties;
- includes POLAM's representation that it verified the products meet its operational and regulatory needs;
- defines in schedules and exhibits Fiserv's obligations concerning the performance, functionality, and security of the products and services; and
- provides that Fiserv may automatically release new versions of the products and services that improve existing functions or performance.

(Ex. A, Appl. to Seal, at 6, 10-12, §§ 1, 6, 7, 11(b); Ex. B, Appl. to Seal, § 2(c)).[2]

Fiserv's online and mobile banking products (Virtual Branch and Mobiliti) are among the products POLAM has received under the Agreement for years. In 2021, the parties entered an amendment governing Fiserv's provision of these products. (Ex.

---

Agreement, and an undated copy of the redacted agreement will be submitted as Exhibit A to the forthcoming Joint Application to Seal.

[2] The Court may properly consider documents incorporated by reference, such as the 2021 Amendment given it is part of the parties' Agreement which the Complaint relies on (*e.g.*, Compl. ¶ 24). *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051, 1057 n.10 (9th Cir. 2014) (complete declaration was properly considered where complaint relied on portions of declaration, thus incorporating declaration by reference).

B, Appl. to Seal). Notwithstanding POLAM's longstanding use of the products, POLAM now asserts that the multi-factor authentication ("MFA") features in Fiserv's products are deficient in breach of the Agreement. (Compl. ¶¶ 45–46, 128(a)–(b)). POLAM alleges that the security features of Virtual Branch and other Fiserv products are insecure because they do not use POLAM's preferred form of MFA (*e.g.*, possession-based passcodes, biometrics, etc.). (Compl. ¶¶ 39–48, 61–68, 104–106). At the same time, POLAM alleges that Fiserv's updates to the security features of these products also constitute a breach. (*Id.* ¶¶ 61-63, Ex. 3).

POLAM alleges that Fiserv fraudulently induced it into the Agreement and its amendments through purported misrepresentations in five documents regarding Fiserv's MFA: (i) the April 2019 Security Overview (Compl. ¶¶ 25–30); (ii) Fiserv's publicly available Privacy Notice, last updated May 23, 2024 (Compl. ¶¶ 81–83); (iii) a 2025 Cybersecurity Fact Sheet (Compl. ¶¶ 77–79); (iv) a 2025 Global Data Ethics and Privacy Program Fact Sheet (Compl. ¶ 80); and (v) an undated Standardized Information Gathering Questionnaire (Compl. ¶¶ 71–76). The same alleged misrepresentations form the basis of POLAM's claims that Fiserv misappropriated POLAM's "trade secrets" and engaged in unfair trade practices.

Three of the four dated documents are dated years ***after*** POLAM executed the 2014 Agreement and the 2022 Amendment extending the Agreement's term to 2030. As for the 2019 Security Overview, POLAM alleges that document is false and constitutes fraud merely because at a hearing that took place seven years later (in a different case to which POLAM is not a party), Fiserv's counsel argued that NIST guidance is not binding on private institutions like Fiserv and the agreement in that case does not require Fiserv to adopt those standards. (*Id.* ¶¶ 30, 33–36).

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plausibility requires

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court need not "accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

For fraud claims, the pleading bar is higher still. Rule 9(b) requires that fraud be alleged "with particularity," meaning the plaintiff must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted).

Leave to amend may be denied if amendment would be futile. *Doe v. Grindr Inc.*, 709 F. Supp. 3d 1047, 1051 (C.D. Cal. 2023), *aff'd*, 128 F.4th 1148 (9th Cir. 2025). Accordingly, denial of leave to amend is appropriate where the court determines that allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency. *Id.*

## IV. ARGUMENT

### A. POLAM HAS NOT PLAUSIBLY ALLEGED BREACH OF ANY CONTRACTUAL OBLIGATION (CLAIMS 1–3).

"To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (citation omitted). Rule 8 requires that POLAM "identify a specific contract provision breached by the defendant" and provide a plausible description of how Fiserv breached. *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 797 (C.D. Cal. 2022); *Brainbuilders LLC v. EmblemHealth, Inc.*, 2022 WL 3156179, at *7 (S.D.N.Y. Aug. 8, 2022).

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

### 1. The Complaint Does Not Plausibly Allege That Fiserv Failed to Perform Its Obligations for Any Product or Service.

Fiserv agreed to provide the products and services "described in the attached Exhibits, subject to the terms set forth in this Agreement and in the applicable Exhibit." (Ex. A, Appl. to Seal, at 6, § 1). Indeed, through multiple amendments, Fiserv and POLAM agreed to no fewer than 22 separate schedules and exhibits spanning over 150 pages. The parties' rights and obligations related to the performance and functions of the products and services, including security and authentication, are governed by these detailed schedules and exhibits.

POLAM ignores all of this. The Complaint accuses Fiserv of failing to provide specific forms of MFA in specific products, but does not cite any exhibit, schedule, or provision requiring the security features or authentication processes that POLAM believes are required under the Agreement. POLAM's inability to "identify a specific contract provision breached" by Fiserv is fatal to its breach of contract theory and mandates dismissal. *Bodenburg v. Apple Inc.*, 146 F.4th 761, 767-68 (9th Cir. 2025) (affirming dismissal of breach of contract claim where plaintiff could not point to any provision of agreement that expresses obligation sued upon).

### 2. POLAM's Reliance on Sections 3 and 4 of the Agreement Violates the Agreement's Plain Language.

Unwilling (or unable) to address specific obligations in the Agreement's schedules and exhibits, POLAM attempts to supplant them by extracting non-existent standards from a confidentiality provision (Ex. A, Appl. to Seal, at 7 § 3(b)) and a provision requiring Fiserv to have an information security program (Ex. A, Appl. to Seal, at 9 § 4(b)). Section 3 is a standard confidentiality/non-disclosure clause that has nothing to do with the security features Fiserv provides, and Section 4 mandates only that Fiserv have an "information security program," which POLAM admits Fiserv has. (Ex. A, Appl. to Seal, at 7-9 §§ 3, 4; Compl. ¶¶ 37-38). Neither provision mandates any specific type of security feature—let alone MFA in the form POLAM

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

now contends it wants.

### 3. POLAM Cannot State a Claim Under Section 3.

POLAM asserts that Section 3(b) of the Agreement requires Fiserv to use security features for its products and services that are equivalent to those Fiserv uses internally. (Compl. ¶¶ 1–4, 37–38, 128(a)). This is wrong.

First, the plain language and structure of Section 3(b) confirm it is a mutual confidentiality and non-disclosure agreement. Section 3 defines "Discloser" as the entity providing confidential information and "Recipient" as the entity receiving said confidential information. (Ex. A, Appl. to Seal, at 7-8, § 3). Section 3(b) does not impose confidentiality obligations only on Fiserv, but equally on any "Recipient" of information as it is defined in that section:

> Recipient agrees to hold as confidential all Information it receives from the Discloser. All Information shall remain the property of Discloser or its suppliers and licensors. Recipient will use the same care and discretion to avoid disclosure of Information as it uses with its own similar information that it does not wish disclosed, but in no event less than a reasonable standard of care and no less than is required by law. Recipient may only use Information for the lawful purposes contemplated by this Agreement….

(*Id.*).

Section 3(b) does not mention information security, MFA, token-generated codes, biometrics, or layered authentication. (*Id.*) It simply states what uses of confidential information are permitted, identifies third parties to whom such information may be disclosed, and defines what happens to that information when the Agreement ends. (*Id.*; Ex. A, Appl. to Seal, at 17-18 § 8(e) (noting Fiserv may delete client files 30 days after end of Agreement)). Thus, Section 3(b) is nothing more than an ordinary, mutual non-disclosure agreement. The Court should apply Section 3(b)'s plain and unambiguous language, *see* *Piccirilli v. Yonaty*, 204 A.D.3d 1322, 1323 (N.Y. App. Div. 2022), and disregard allegations about security obligations that appear nowhere in that section. *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015) (disregarding allegations not supported by contract relied

on by complaint).

Second, POLAM attempts to transform Section 3(b)'s confidentiality clause into a cybersecurity warranty. But "disclosure" and "access" are not the same thing. Section 3(b) concerns the use and disclosure of information by a contracting party; it does not purport to impose a duty to prevent all unauthorized access by third parties. *Compare Disclosure*, *Black's Law Dictionary* (12th ed. 2024) ("The act or process of making known something that was previously unknown; a revelation of facts <a lawyer's disclosure of a conflict of interest>."), with *Access*, *id.* ("A right, opportunity, or ability to enter, approach, pass to and from, or communicate with <access to the courts>."); *see also Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 379 (S.D.N.Y. 2013) (undefined terms given their "ordinary meaning"). Indeed, courts often distinguish between "disclosure" and "access" in other related contexts. *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 499 (D. Md. 2005) (Computer Fraud and Abuse Act "do[es] not prohibit the unauthorized disclosure or use of information, but rather unauthorized access"); *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012); *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 858 (N.Y. Sup. Ct. 2015) ("theft of the subject data cannot constitute a disclosure of said information").

Third, even if Section 3(b) could be construed as a general cybersecurity provision, under New York law, "a specific provision … governs the circumstance to which it is directed, even in the face of a more general provision." *In re AMR Corp.*, 730 F.3d 88, 99 (2d Cir. 2013) (citation omitted). As explained in Section IV.A.1 *supra*, the Agreement defines at length (in more than a dozen exhibits and schedules) Fiserv's performance and, where applicable, security obligations. POLAM's argument that a general confidentiality obligation in Section 3(b) overrides these more specific obligations inverts a basic contract maxim.

Last, POLAM's interpretation of Section 3(b) would lead to absurd results given its mutuality and the parties' starkly different institutional capacities. Courts

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

decline interpretations that yield "absurd" or "commercially unreasonable" outcomes. *Cole v. Macklowe*, 99 A.D.3d 595, 596 (N.Y. App. Div. 2012). Fiserv is a Fortune 500 fintech provider serving a variety of global customers; POLAM is a credit union local to a single city. It is implausible that the parties intended "the same" security features apply to both entities, much less that such a sweeping obligation would be hidden in a single sentence of a confidentiality clause while other provisions address information security and product-specific controls. Rather, Section 3(b) governs Fiserv's obligations regarding, *e.g.*, the retention of POLAM's data following termination of the Agreement or a schedule. (Ex. A, Appl. to Seal, at 17-18 § 8(e)). POLAM's reading would render those provisions superfluous and produce a commercially unreasonable (and unlikely) result.

**4. POLAM Cannot State a Claim Under Section 4(a).**

POLAM alleges Fiserv breached Section 4(a) by "failing to implement and maintain an information security program that appropriately protects the security and confidentiality of POLAM's information." (Compl. ¶ 128(b)). But POLAM offers nothing to support this subjective view and has declined to articulate a standard or its theory of breach, leaving Fiserv and the Court to guess.

To the extent that POLAM's claim is predicated on Fiserv's replication of its security environment for POLAM, that argument fails as explained above.

To the extent POLAM's claim is predicated on the belief that NIST or other federal guidance govern the parties' contractual obligations and configurations of the products, that fails too. Section 4 does not mention NIST, FFIEC, or any other federal guidance. Further, the FFIEC guidance upon which POLAM relies expressly states that it "does not endorse any specific information security framework or standard."[3]

[3] (Compl. ¶ 42; https://www.ffiec.gov/sites/default/files/media/press-releases/2021/authentication-and-access-to-financial-institution-services-and-systems.pdf ).

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

Section 4(a) does include Fiserv's agreement to "use security safeguards for all personal information pertaining to Massachusetts residents in accordance with Massachusetts Regulation 201 CMR 17.00" (Agreement § 4(a)), but not even POLAM alleges that regulation is germane here. If anything, the express invocation of the Massachusetts standard confirms the parties did not incorporate other third-party standards into Section 4. *Gillen v. Town of Hempstead Town Bd.*, 63 Misc. 3d 653, 658 (N.Y. Sup. Ct. 2019) (applying *expressio unius est exclusio alterius*).

POLAM's conclusory and speculative allegation that Fiserv's information security program is not adequate does not state a claim. *See Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 50 (D. Ariz. 2021) ("Alleging that a system was inadequate because a negative result occurred is conclusory, and Plaintiffs' claim that Magellan's system fell below an ill-defined standard is conclusory. The Court is permitted to disregard conclusory allegations. And so, the Court finds that Plaintiffs fail to properly allege that Magellan's data security was inadequate.").

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

**5. Fiserv's Updates to Its Products Is Not a Breach (¶¶ 128(f), 148).**

Without pointing to any specific contractual term, POLAM complains that Enhanced Authentication renders Virtual Branch insecure. In the same breath, POLAM claims Fiserv is prohibited from upgrading Enhanced Authentication to Fiserv's newer SecureNow product. (Compl. ¶ 128(f)). That argument contradicts logic and the Agreement's plain language.

The Digital Online Banking Services Schedule to the ASP Services Exhibit in the October 18, 2021 Amendment, which governs the online and mobile banking products, expressly authorizes Fiserv to "automatically release new version(s) of the Services that improves existing functions or performance." (Ex. B, Appl. to Seal, at 170 § 2(c)). In that same schedule, POLAM agreed to terms governing SecureNow if it receives that product, thereby refuting the contention that POLAM is being "forced" to accept terms it doesn't like. (*Id.* at 173 § 3(c)). Thus, POLAM does not state a

breach claim tied to Fiserv's product upgrade. *Johnson*, 793 F.3d at 1008.

Moreover, any payment obligation as to the SecureNow upgrade is unripe because, as stated in Fiserv's Notice, POLAM can continue paying the same rate as it does now for Enhanced Authentication and any implementation fees will be 100% covered by a credit. (ECF 35-2 at 2). *Med. Diagnostic Lab'ys, L.L.C. v. Protagonist Therapeutics, Inc.*, 298 F. Supp. 3d 1241, 1253 (N.D. Cal. 2018) ("The possibility of future payments ... is too speculative and contingent to create a case or controversy under Article III.").

**6. POLAM's Other Contract-Related Claims Fail.**

a. The Agreement Has Not Automatically Renewed. (¶¶ 128(E), 150).

Troutman Pepper Locke LLP
100 Spectrum Center Drive
Suite 1500
Irvine, CA 92618

POLAM also contends that Fiserv breached the Agreement by violating a New York statute that POLAM asserts prohibits "an automatic renewal of the Master Agreement without providing the required personal or certified mail notice[.]" (Compl. ¶¶ 128(e), 150). First, the statute applies only to contracts involving the "service or repair to or for any real or personal property." N.Y. Gen. Oblig. Law § 5-903(2). It does not apply to administrative services and commercial contracts like those here. *See Trustpilot Damages LLC v. Trustpilot Inc.*, 2022 WL 2124865, at *3 (2d Cir. June 13, 2022) (data service contract); *Trepp, LLC v. McCord Dev., Inc.*, 100 A.D.3d 510, 510 (N.Y. App. Div. 2012) (financial analytics). Second, before expiration of the 10-year initial term of the Agreement, the parties mutually extended that term through 2030. (Ex. A, Appl. to Seal, at 17 § 8(a), 62 § 2). As such, no automatic renewal ever occurred, so there is no breach and there is nothing for this Court to declare "[d]efective" or "unenforceable."

b. The Audit Provisions Were Not Breached (¶128(c)–(d)).

POLAM does not plausibly allege breach of various "audit" provisions (¶¶ 128(c)–(d)). POLAM contends Fiserv breached various provisions in the Agreement that purportedly required Fiserv to provide "audit" documents, namely Sections 4(a),

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

4(b), and 10(b) of the Agreement and Sections 4(d), 4(h), and 6(c) of the ASP Services Exhibit. (Compl. ¶¶ 108, 128(c)–(d)). POLAM admits, and the exhibits to the Complaint make clear, that Fiserv has already provided POLAM with its information security plan pursuant to Section 4(b). (ECF 1-7 at 10). As for invoicing records, as Fiserv stated, it was willing to provide such records so long as POLAM stated specifically for which products or services it wanted the records, given that Section 10(b) of the Agreement only requires a response to "reasonable requests"; accordingly, there was no breach. (Ex. A, Appl. to Seal, at 11 § 10(b); ECF 1-7 at 10). And, as for the other "audit" requirements in Section 4(a) of the Agreement and Sections 4(d), 4(h), and 6(c) of the ASP Services Exhibit, as of June 1, 2014, Fiserv has provided a System and Organization Controls Report that fulfills the obligations of those sections, thereby mooting the issue.

In any case, POLAM also fails to plead a breach of contract claim as to any of the "audit" terms because it does not allege it suffered any damage or loss due to the alleged timing or manner of Fiserv's production. Without that, there is no breach claim. *Edwards*, 938 F.3d at 12 (damages are an element of breach of contract).

c. POLAM's Good Faith and Fair Dealing Claim is Duplicative of its Breach of Contract Claim (¶ 128(g)).

POLAM cannot plead a breach of the covenant of good faith and fair dealing duplicating a contract breach (¶ 128(g)). Although New York law implies the covenant of good faith and fair dealing into every contract, the claim must be dismissed if it is duplicative of a breach of contract claim. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant.").[4]

---

[4] POLAM advances separate "claims" for rescission and specific performance claim. Each fails as a remedy without an underlying claim. As a threshold matter, POLAM predicates both its first rescission theory and its specific performance claim on

d. Polam's Declaratory Relief Claim Fail (Claim 4).

POLAM's declaratory judgment claim requests five different declarations: that (1) POLAM is not "obligat[ed] to pay for or contract for" the SecureNow product (Compl. ¶ 148); (2) any "automatic renewal" of the Agreement was invalid (Compl. ¶ 150); (3) the Agreement's exculpation and limitation of liability provisions are unenforceable (Compl. ¶ 149); (4) POLAM is not obligated to pay outstanding accounts receivable or future invoices (Compl. ¶ 151); and (5) POLAM is not "obligat[ed] to pay" early termination, deconversion, and post-termination fees or liquidated damages (Compl. ¶ 152). Fiserv has already dispensed with the first and second requests. *See supra* Section IV.B.5 (SecureNow); *supra* Section IV.A.6.a (Automatic Renewal). POLAM's remaining requests are not ripe.

POLAM does not allege that it has sought to terminate the Agreement for convenience, requested deconversion services that would trigger termination or deconversion fees, has incurred an outstanding or future accounts receivable, or that Fiserv has invoked the Agreement's exculpation or limitation of liability provisions. These provisions are not yet in dispute, and any harms regarding the declaratory action have yet to materialize, so the claim must be dismissed as unripe. *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 793 (9th Cir. 2012) (ripeness requires "demonstrat[ing] the existence of an injury in fact"); *see also* *Owners Ins. Co. v. Parsons*, 610 F. App'x 895, 898 (11th Cir. 2015) (affirming dismissal of claim

---

Fiserv's alleged contractual breaches. (Compl. ¶¶ 133, 141–43). Rescission and specific performance are unavailable without a plausibly pleaded breach of contract claim. *Cherokee Owners Corp. v. DNA Contracting, LLC*, 96 A.D.3d 480, 481 (N.Y. App. Div. 2012) (rescission); *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 94 (S.D.N.Y. 2012) (specific performance). Separately, neither rescission nor specific performance is appropriate where there is an adequate remedy at law, which POLAM effectively concedes is available. (Compl. ¶¶ 47, 89); *Romanoff v. Romanoff*, 148 A.D.3d 614, 616 (N.Y. App. Div. 2017) (rescission); *T.F. Demilo Corp. v. E.K. Const. Co.*, 207 A.D.2d 480, 481 (N.Y. App. Div. 1994) (specific performance).



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

seeking "hypothetical advisory opinion" that is "unavailable through the declaratory judgment procedure").

e. Polam's Unjust Enrichment Claim Fails (Claim 5).

Separately, POLAM's unjust enrichment claim fails for a straightforward reason: POLAM itself admits that the Agreement "is a valid contract[.]" (Compl. ¶¶ 125, 138). POLAM also alleges that Fiserv "ha[s] not performed as promised[,]" confirming that any purported unjust enrichment arose out of a dispute governed by the Agreement. (Compl. ¶ 155 (emphasis added)). In doing so, POLAM has pled itself out of a claim for unjust enrichment because, under "New York law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

Troutman Pepper Locke LLP
100 Spectrum Center Drive
Suite 1500
Irvine, CA 92618

**B. POLAM FAILS TO PLEAD A DTSA VIOLATION (CLAIM 6).**

To plead a DTSA claim, POLAM must allege, *inter alia*, that it "owned a trade secret" and Fiserv "misappropriated the trade secret[.]" *Agile Sourcing Partners, Inc. v. Dempsey*, 2021 WL 4860693, at *6 (C.D. Cal. July 15, 2021) (citation omitted). To qualify as a trade secret, POLAM cannot merely conclude the information is of economic value; rather, it must show the information "derives its economic value from not being generally known[.]" *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *8 (N.D. Cal. Mar. 17, 2020); *accord* 18 U.S.C. § 1839(3)(B). To "misappropriate" under the DTSA, a party must either disclose or use a trade secret without consent or acquire a trade secret through "improper means." 18 U.S.C. § 1839(5). POLAM plausibly pleads neither.

First, POLAM does not plead a plausible trade secret. POLAM contends its "trade secrets include, but are not limited to, the identities and contact information of its members and employees, the compilation of members' financial history and transactions as reflected on account records and information, and credit information" (Compl. ¶ 159), but such broad categories of information are insufficiently specific to

plead the existence of a trade secret. *Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*, 2023 WL 6373884 (C.D. Cal. Aug. 24, 2023) (finding "personal and financial information of customers, vendors and suppliers," among other categories, too broad to plead a trade secret).

POLAM also provides conclusory allegations that its "trade secrets provide it with economic advantages over its competitors." (Compl. ¶ 163). But financial histories, transactions, and credit information do not derive economic value from being kept secret; rather, they are valuable because they can be shared with third parties to establish, for example, that an individual consumer is not a credit risk or to facilitate transactions. This means the alleged groupings of information do not constitute a "trade secret" under 18 U.S.C. § 1839(3)(B). *CleanFish, LLC*, 2020 WL 1274991, at *8; *cf. Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1087 (D. Colo. 2018) (finding card data, "including cardholder names, credit or debit card numbers, and corresponding CVVs", not a trade secret because their value is merely "derived from their connection to an underlying financial account"). The same is true of the alleged "identities and contact information" of POLAM's members and employees (Compl. ¶ 159). *See Nationwide Equip. Co. v. Allen*, 2005 WL 1228360, at *5 (M.D. Fla. May 24, 2005) (customer list did not constitute trade secret where customer list was accessible to third parties).

While POLAM describes various harms that might occur if a person's name, contact information, financial history, and transactions are accessed by a bad actor (*see, e.g.*, Compl. ¶¶ 90–102), that confuses the harm a person may suffer from disclosure with the proper inquiry under the DTSA: specifically, whether POLAM realizes independent economic value specifically because member and employee information is kept secret. 18 U.S.C. § 1839(3)(B); *CleanFish, LLC*, 2020 WL 1274991, at *8. POLAM does not (and cannot) allege the latter and thus has not alleged a valid trade secret.

Second, POLAM does not plausibly allege "misappropriation." POLAM's

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

misappropriation theory is premised on POLAM's "trade secrets [being] stored and accessible on Fiserv's insecure systems." (Compl. ¶ 165). But POLAM has been a Fiserv client since 2014, and the parties have shared information under the Agreement as part of their ongoing commercial relationship. In other words, POLAM solely alleges that Fiserv possesses POLAM's information as part of its performance under the Agreement. (Compl. ¶¶ 159-68). That is lawful acquisition in a commercial relationship, not acquisition by improper means. *Giostar Therapy, LLC v. Bioscience Americas LLC*, 2019 WL 7841723, at *3 (D. Ariz. Apr. 22, 2019) ("[W]hile Plaintiffs might be correct that Defendants only had the right to use its trade secrets pursuant to an allegedly breached contract, such an argument only alleges breach of contract; it does not allege acquisition of trade secrets through improper means."); *cf. Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1026 (E.D. Cal. 2011) (plaintiff could not show likelihood of success on improper means to obtain trade secret given "Agreement authorized the parties to disclose to each other and to receive from each other trade secret information").

The only other allegation that could support misappropriation is that "Fiserv disclosed POLAM's extraordinarily sensitive confidential information to other credit unions." (Compl. ¶ 48). This allegation does not identify with sufficient specificity what trade secret, if any, was disclosed and therefore does not plausibly support the misappropriation element. *Unified Grocers, Inc. v. VM Int'l, Inc.*, 2020 WL 5370621, at *4 (C.D. Cal. Apr. 8, 2020) (conclusory allegations of trade secrets like "customer information" insufficient to state a claim).

### C. POLAM FAILS TO PLEAD FRAUD (CLAIM 7).

POLAM fails to allege the elements required for a fraud claim. To plead fraud or fraudulent misrepresentation,[5] a plaintiff must allege (1) a misrepresentation of

[5] The elements of fraud and fraudulent misrepresentation are the same. *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015).



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

material fact; (2) knowledge of falsity; (3) intent to deceive and induce reliance; (4) actual and justifiable reliance; and (5) resulting damage. *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1557 (2011). Consistent with Federal Rule of Civil Procedure 9(b), POLAM must "plead and prove in full, factually and specifically, all of the elements of the cause of action." *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1139 (E.D. Cal. 2013) (fraud claim dismissed with prejudice where plaintiff did not adequately plead elements).

**1. Polam Fails To Allege An Actionable Misrepresentation Under Rule 9(B).**

Preliminarily, the Complaint fails to allege any actionable misrepresentation with specificity. To satisfy the heightened pleading standard under Rule 9(b), a plaintiff's "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh*, 726 F.3d at 1133 (affirming dismissal of fraud claim where allegations failed to satisfy heightened pleading standard as they did not identify when defendants made allegedly false representations). Fraud claims that fail to detail with particularity when the alleged misrepresentation was made or how it is false, are routinely dismissed. *See, e.g.*, *id.*; *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 979 (N.D. Cal. 2016) (dismissing fraud-based claims where plaintiffs failed to specify when they saw allegedly fraudulent marketing materials, or "particularly explain what [wa]s false or misleading" about alleged misrepresentations).

Without adequately identifying "who, what, when, where, and how," POLAM alleges that Fiserv (collectively) "defrauded" POLAM. Preliminarily, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations" as to each defendant. *Yamauchi*, 84 F. Supp. 3d at 1019 (dismissing fraud claim where allegations referred to defendants collectively and made no specific allegations against each defendant separately).

More importantly, the Complaint is devoid of any allegations about "the names of the persons who allegedly made the fraudulent representation, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 977 (C.D. Cal. 2014) (dismissing fraud claim because plaintiffs "failed to identify any actionable statements or omissions attributable to" corporate defendant). Rather, POLAM alleges Fiserv fraudulently induced it into the Agreement, or continued performance thereunder, through purported misrepresentations in five documents regarding Fiserv's MFA (Compl. ¶¶ 172-186): (i) the April 2019 Security Overview (Compl. ¶¶ 25–30); (ii) Fiserv's publicly available Privacy Notice, last updated May 23, 2024 (Compl. ¶¶ 81–83); (iii) a 2025 Cybersecurity Fact Sheet (Compl. ¶¶ 77–79); (iv) a 2025 Global Data Ethics and Privacy Program Fact Sheet (Compl. ¶ 80); and (v) an undated Standardized Information Gathering Questionnaire (Compl. ¶¶ 71–76). Notably, despite vaguely alleging POLAM received these documents containing the alleged misrepresentations (Compl. ¶¶ 25, 69, 71, 77), POLAM does not attach a single one; instead, cherry-picking certain statements without specifying who made them, when they were made, or how or when POLAM received them. (Compl. ¶¶ 25-30, 71-83, 172-186). Such non-specific statements, devoid of the context, fall far short of Rule 9(b)'s heightened pleading requirement.

Further, POLAM has not alleged a representation of a specific, ascertainable fact about any product or service it receives under the Agreement. In *Yastrab*, the court rejected the plaintiffs' fraud theory predicated on "general descriptions about the [product's] attributes", as the marketing materials at issue did not represent any fact about what the defendant's product would do or not do if its software changed in the future. 173 F. Supp. 3d at 979. Here too POLAM's fraud claim is predicated on mere general statements about "guidance" for the "design[]" of Fiserv's cybersecurity program, what it is "built on" or "based on", and "appropriate safeguards" or "appropriate security measures" (Compl. ¶¶ 28, 73, 77, 80, 82), rather than any

specific fact about a product or service POLAM receives or any security measures applicable to POLAM. POLAM's claim instead rests on vague and conclusory allegations that it received documents containing misrepresentations, without specifying how or when it received them, and general nonactionable statements. None of these allegations meet the requirements under Rule 9(b). *See Yastrab*, 173 F. Supp. 3d at 979.

In addition to allegations regarding the five documents, POLAM also alleges without sufficient particularity that Fiserv misrepresented "the actual level of protection afforded to [POLAM's] confidential information." (Compl. ¶ 179). Again, this generic allegation fails to plead *any* specific facts surrounding the alleged misrepresentation, including when or how any representations regarding the "level of protection" for POLAM's information were made to POLAM by Fiserv. POLAM's allegations thus fail to satisfy the Rule 9(b) pleading standard, which is fatal to its fraud claim. *See Salameh*, 726 F.3d at 1133.

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

**2. Polam Fails To Plead Reliance.**

POLAM also fails to plead it actually and justifiably relied on Fiserv's purported representations. The reliance element for fraud requires "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Khan*, 975 F. Supp. 2d at 1139. POLAM alleges only that Fiserv provided the Security Overview to POLAM before the 2022 and 2023 amendments, but does not allege that POLAM received any of the other alleged misrepresentations before the 2022 and 2023 amendments such that POLAM could have possibly relied on them in signing the amendments. Indeed, none of the dated documents, as pled, existed when POLAM executed the Agreement in 2014. (Compl. ¶ 24). Similarly, the Privacy Notice, the 2025 Cybersecurity Fact Sheet, and the 2025 Global Data Ethics and Privacy Program Fact Sheet, as alleged, did not exist in 2022, when POLAM extended the Agreement to 2030. (Ex. A, Appl. to Seal, at 62). As to the April 2019 Security Overview, the MFA standards POLAM raises, including the FFIEC's 2021

Authentication Guidance, the July 2025 update to NIST's Digital Identity Guidelines, and CISA's guidance on phishing-resistant MFA—all postdate April 2019. (Compl. ¶¶ 42–44). POLAM alleges no standard in existence as of April 2019 that Fiserv's Security Overview allegedly misrepresented and that POLAM could have relied on. Likewise, POLAM fails to allege any facts about when it received the Standardized Information Gathering Questionnaire or how the questionnaire influenced POLAM's decision to enter into the Agreement or any particular amendment. (Compl. ¶¶ 71–76).

Further, any purported reliance on the alleged misrepresentations is unjustified in light of the controlling provisions in the Agreement known to POLAM since its inception. A party is presumed to know the terms of the agreement it executed. *See* *Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 93 (2013) ("[C]ourts must . . . presume parties understood the agreements they sign, and that the parties intended whatever the agreement objectively provides[.]"). POLAM's Agreement, dating back to 2014, governs the parties' rights and obligations, including with respect to the security features of Fiserv's products and services, as discussed in Section III.B.1.[6] Thus, none of POLAM's unsupported allegations about its reliance on the generalized statements made in any of the five documents (*see, e.g.*, Compl. ¶ 182) are viable under the Agreement's express terms about what products and services Fiserv was agreeing to provide. POLAM thus cannot plausibly plead justifiable reliance, and its fraud claim must fail.

**3. Polam Fails To Adequately Plead Damages Resulting From The Alleged Fraud.**

Finally, POLAM's allegations do not demonstrate a causal link between any of

[6] Further, the Agreement's integration clause expressly provides: "Each party hereby acknowledges that it has not been induced to enter into this Agreement by virtue of, and is not relying on, any representation made by the other party not embodied herein . . . ." (Ex. A, Appl. to Seal, at 11 § 11(b)).



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

Fiserv's alleged misrepresentations and its conclusory damages allegations. (Compl. ¶ 186). To adequately plead the "resulting damages" element, the allegations must show a causal relationship between the alleged fraud and damages sought. *See Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1158 (E.D. Cal. 2010) (fraud claim insufficiently pled where plaintiff failed to allege "facts to plausibly suggest a causal connection between the alleged fraud and some damage" to plaintiff). Similar to *Sipe*, the Complaint here merely alleges in conclusory fashion that it has suffered "damages and harm" "as a direct and proximate result of Fiserv's fraud[.]" (Compl. ¶ 186). This vague allegation fails to plead the requisite casual connection between the alleged fraud and damages. Accordingly, POLAM's fraud claim should be dismissed.

**D. POLAM FAILS TO PLEAD A UCL CLAIM (CLAIM 8).**

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

POLAM's claim under California's UCL fails because POLAM does not allege any actionable violation of the UCL or any form of recoverable relief.

Preliminarily, POLAM cannot recover damages under the UCL, which is limited to restitution or injunctive relief. *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (2005) (finding no viable UCL remedy where plaintiff was not entitled to restitution nor injunctive relief). With respect to its UCL claim, POLAM has alleged only that it "has suffered and will continue to suffer damages and harm." (Compl. ¶ 199). Nowhere does the Complaint seek restitution or injunctive relief in connection with POLAM's UCL claim.[7] POLAM mentions restitution only in its prayer for relief, and claims restitution in connection only with alleged "breaches and repudiation" rather than any alleged UCL violation. (Compl., ECF 1, at 47).

Additionally, as set forth below, even if POLAM has pled available relief under the UCL (which it has not), POLAM has not pled a claim under the unlawful, unfair,

[7] The only mention of restitution is found POLAM's prayer for relief and in connection only with alleged "breaches and repudiation" rather than an alleged UCL violation. (Compl., ECF 1, at 47).

or fraudulent prongs of the UCL. *See* *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1087 (C.D. Cal. 2017) (UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent").

**1. POLAM Fails to State a Claim Under the "Unlawful" Prong.**

POLAM fails to allege "unlawful" conduct under the UCL because it has not alleged how Fiserv's conduct violated the sole statute its claim relies on. To plead a UCL claim under the "unlawful" prong, the plaintiff "must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010) (dismissing UCL claim under "unlawful" prong where plaintiff failed to tie factual allegations with sufficient particularity to elements of statutes referenced in operative complaint). That is, the plaintiff must plead with particularity how the facts of this case violate that specific statute. *See* *Schmitt v. SN Servicing Corp.*, No. 21-CV-03355-WHO, 2021 WL 3493754, at *1, 9 (N.D. Cal. Aug. 9, 2021) (dismissing UCL claim under unlawful prong where plaintiff asserted only "conclusory allegations" that defendant violated certain statutes by "[f]ailing to establish adequate practices and procedures for maintaining and storing Plaintiffs' and Class members' personal and financial information, and storing Plaintiffs' and Class members' personal and financial information in an unsecure electronic environment"). POLAM fails to allege how the facts show a violation of Cal. Civ. Code § 1798.81.5—the only predicate statute alleged for its UCL claim. *See* Compl. ¶ 195(a). POLAM only vaguely describes the statute with a parenthetical that states "Reasonable Security of Personal Information" without specifying any section, explaining the applicability of the statute, or addressing the elements of the statute. Further, POLAM's conclusory allegation that Fiserv "fail[ed] to implement and maintain security procedures and practices appropriate to the nature of the information" (Compl. ¶ 195(a)) mirrors the "conclusory allegation" that the *Schmitt* court found insufficient to plead a UCL claim

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

under the "unlawful" prong. *See* Schmitt, 2021 WL 3493754, at *9. Accordingly, POLAM fails to plead a UCL claim under the "unlawful" prong.

**2. POLAM Fails to State a "Fraudulent" Prong Claim.**

POLAM's UCL claim under the "fraudulent" prong falls along with its common law fraud claim, as it likewise fails to meet the Rule 9(b) pleading standard. A UCL claim is subject to the heightened pleading standard under Rule 9(b) where, as pled, the UCL claim is grounded in alleged fraudulent conduct. *See* *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) ("The requirement in Rule 9(b) of the Federal Rules of Civil Procedure that allegations of fraud be pleaded with particularity applies to claims which are made in federal court under the . . . UCL."); *Toyo Tire Holdings of Americas Inc. v. Ameri & Partners, Inc.*, No. 8:23-CV-01300-FWS-DFM, 2024 WL 1684482, at *7 (C.D. Cal. Mar. 13, 2024) (dismissing UCL claim, along with fraud claims, where plaintiff's fraud-based allegations insufficiently satisfied Rule 9(b)'s pleading standard). POLAM alleges the same "unfair and deceptive trade acts and practices" already alleged under its fraud claim. *Compare* Compl. ¶¶ 192, 196(b)-(c) (listing misrepresentations regarding Fiserv's security measures as UCL violations), *with* Compl. ¶¶ 175-181 (alleging misrepresentations regarding Fiserv's security measures constitutes fraud). Thus, POLAM's fraud claim repackaged as a UCL claim fails for the same reasons that the fraud claim fails. *See, e.g.*, *Toyo Tire*, 2024 WL 1684482, at *7.

POLAM's UCL claim fails for the additional reason that it has not alleged that reasonable consumers are likely to be deceived by Fiserv's allegedly fraudulent acts. *See* *Abramson v. Marriott Ownership Resorts, Inc.*, 155 F. Supp. 3d 1056, 1066 (C.D. Cal. 2016) (dismissing UCL claim under "fraudulent" prong where plaintiffs did not adequately allege that reasonable members of the public were likely to be deceived by alleged fraudulent conduct). This requires pleading a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Nazemi v. Specialized Loan Servicing, LLC*,

637 F. Supp. 3d 856, 863 (C.D. Cal. 2022) (citation omitted). Accordingly, POLAM's UCL claim under the "fraudulent" prong fails.

**3. POLAM Fails to State an "Unfair" Prong Claim.**

POLAM also does not plead a UCL claim under the "unfair" prong which overlaps with its UCL claim under the "fraudulent" prong. Where the "unfair" prong claim overlaps with the plaintiff's claims of fraud, the "unfair" prong claim cannot survive if the "fraudulent" prong claim fails. *Toyo Tire*, 2024 WL 1684482, at *9. POLAM does not distinguish between "fraudulent" and "unfair" conduct under the UCL but, rather, appears to rely on the same conduct for both prongs. (Compl. ¶ 195(b)-(c)). Accordingly, as POLAM's claim under the "fraudulent" prong fails for the reasons discussed above, POLAM's claim under the "unfair" prong likewise fails.

Further, POLAM fails to adequately plead liability under any of the possible tests for "unfair" consumer UCL claims. *See Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 257 (2010) (setting forth tests applied in different lines of cases and finding plaintiff failed to state UCL claim where plaintiff failed to meet any of the tests). As discussed above, *supra* Section IV.D.1, POLAM has not adequately alleged a violation of a specific constitutional, statutory, or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law. *Id.*; *see also Nazemi*, 637 F. Supp. 3d at 864 (plaintiff failed "tethering" test where plaintiff advanced no factual allegations supporting claim that defendants' conduct violates constitutional, statutory, or regulatory provision or antitrust law). Specifically, POLAM does not allege any of the requirements of Cal. Civ. Code § 1798.81.5, how it applies to the present dispute, or how Fiserv's conduct violates the statute. As such, POLAM cannot satisfy the "tethering" test. Nor has POLAM alleged that Fiserv's business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum*, 182 Cal. App. 4th at 257; *see also Republican Nat'l Comm. v. Google*

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

*LLC*, 742 F. Supp. 3d 1099, 1119 (E.D. Cal. 2024) (plaintiff failed to meet test where it did not allege defendant realized monetary benefit from its alleged unfair business practice). The Complaint does not plead – nor could it – that Fiserv's security practices (Compl. ¶¶ 192, 195), are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Indeed, POLAM does not allege Fiserv stands to gain any benefit from its alleged failure to use certain security procedures and practices. POLAM's "unfair" prong claim thus fails under this test.[8]

Given that POLAM does not satisfy any test under the "unfair" prong, POLAM's UCL claim fails under all prongs and must be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss POLAM's Complaint in its entirety. Additionally, leave to amend would be futile and POLAM has failed to identify any additional facts in the parties' meet-and-confer that would save any of their claims. *See* Allison Decl. ¶ 6.

Dated: April 30, 2026

TROUTMAN PEPPER LOCKE LLP

By: */s/ Steven D. Allison*
Steven D. Allison
Christy A. Markos
Lynda B. Nguyen

Attorneys for Defendants
FISERV SOLUTIONS, LLC f/k/a
FISERV SOLUTIONS, INC.; and
FISERV, INC.

[8] A third test for the "unfair" prong applies only to anti-competitive claims rather than consumer claims like POLAM's. *See* *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). Even if the test applies, POLAM's conclusory allegations are insufficient to satisfy it. (*See* Compl. ¶¶ 188-199).