TROUTMAN PEPPER LOCKE LLP
Steven D. Allison (SBN 174491)
steven.allison@troutman.com
Christy A. Markos (SBN322278)
christy.markos@troutman.com
Lynda B. Nguyen (SBN 340720)
lynda.nguyen@troutman.com
100 Spectrum Center Drive, Suite 1500
Irvine, CA 92618
Tel: 949.622.2700 / Fax: 949.622.2739

FOLEY & LARDNER LLP
Jesse Byam-Katzman (admitted *pro hac vice*)
jbyam-katzman@foley.com
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel: 414.271.2400 / Fax: 414.297.4900

Attorneys for Defendants FISERV SOLUTIONS, LLC F/K/A FISERV SOLUTIONS, INC.; and FISERV, INC.

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

POLAM FEDERAL CREDIT UNION,

Plaintiff,

vs.

FISERV SOLUTIONS, LLC f/k/a FISERV SOLUTIONS, INC., and FISERV, INC.,

Defendants.

Case No. 2:26-cv-2352-JFW-DFM

Assigned to Honorable John F. Walter

**DEFENDANTS FISERV SOLUTIONS, LLC F/K/A FISERV, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF POLAM FEDERAL CREDIT UNION'S COMPLAINT**

Date: June 22, 2026
Time: 1:30 p.m.
Dept: 7A

Complaint served: March 16, 2026

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 1
  A. Polam Has Failed to Allege a Contractual Provision Breached ........ 1
    1. Section 3(b) is a Confidentiality Provision, Not a Cybersecurity Warranty ........ 2
    2. POLAM Has Not Alleged a Breach of Section 4(a). ........ 4
    3. POLAM Has Not Stated a Claim Regarding SecureNow ........ 6
    4. POLAM'S Other Contract-Related Claims and Remedies Fail. ........ 6
  B. POLAM Does Not Plead Trade Secrets or Misappropriation ........ 7
  C. POLAM's Opposition Fails To Cure Its Defective Fraud Claim. ........ 9
  D. POLAM Cannot State A UCL Claim. ........ 11
III. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*625 3rd St. Assocs., L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040 (N.D. Cal. 2009) ... 10

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015) ... 3

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001 (E.D. Cal. 2011) ... 9

*In re AMR Corp.*, 730 F.3d 88 (2d Cir. 2013) ... 3

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) ... 11

*BASF Corp. v. Platinum Collision Centers, Inc.*, 2019 WL 6317776 (C.D. Cal. July 3, 2019) ... 10

*Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142 (W.D. Pa. 2020) ... 10

*Bodenburg v. Apple Inc.*, 146 F.4th 761 (9th Cir. 2025) ... 1

*Gillen v. Town of Hempstead Town Bd.*, 96 N.Y.S.3d 492 (N.Y. Sup. Ct. 2019) ... 5

*Giostar Therapy, LLC v. Bioscience Americas LLC*, No. CV-18-02788-PHX-SRB, 2019 WL 7841723 (D. Ariz. Apr. 22, 2019) ... 8

*Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799 (D. Ariz. 2022) ... 9

*Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092 (S.D. Cal. 2021) ... 10



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

*Kobayashi v. McMullin*,
No. 2:19-cv-06591-SSS, 2023 WL 3493991 (C.D. Cal. Mar. 2, 2023) ........ 8

*Medike Int'l Corp. v. Giller*,
No. 23-cv-8939, 2024 WL 139575 (S.D.N.Y. Jan. 12, 2024) ........ 8

*Nazemi v. Specialized Loan Servicing, LLC*,
637 F. Supp. 3d 856 (C.D. Cal. 2022) ........ 12

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
830 F.3d 152 (2d Cir. 2016) ........ 2, 5

*Pray, Inc. v. Christian Care Ministry, Inc.*,
No. 2:23-cv-10660-SB-JC, 2024 WL 3509781 (C.D. Cal. June 7, 2024) ........ 9

*RDF Agent, LLC v. Elec. Red Ventures, LLC*,
227 A.D.3d 424 (N.Y. App. Div. 2024) ........ 6

*Rescue 1 Fin., LLC v. Complete Debt Relief LLC*,
No. SACV 23-00982-CJC, 2023 WL 6373884 (C.D. Cal. Aug. 24, 2023) ........ 8

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*,
55 Cal. 4th 1169 (2013) ........ 10

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*,
32 Cal. App. 4th 985 (1995) ........ 10

*Skilstaf, Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012) ........ 2

*Smallman v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022) ........ 12

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) ........ 11

*Sussex Fin. Enters., Inc. v. Bayerische Hypo-Und Vereinsbank AG*,
460 F. App'x 709 (9th Cir. 2011) ........ 11

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) ........ 3

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

*Univ. Sports Pub. Co. v. Playmakers Media Co.*,
725 F. Supp. 2d 378 (S.D.N.Y. 2010) .......... 3

*Yastrab v. Apple Inc.*,
173 F. Supp. 3d 972 (N.D. Cal. 2016) .......... 10

**Statutes and Rules**

Cal. Civ. Code § 1798.81.5 .......... 11

N.Y. CPLR § 214(2) .......... 6

N.Y. Gen. Oblig. Law § 5-903 .......... 6

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

# I. INTRODUCTION

POLAM's Opposition confirms it cannot state a claim for breach of contract. POLAM's theory rests on a misconstruction of a generic non-disclosure provision and a requirement that Fiserv maintain an information security plan. POLAM ignores hundreds of pages of schedules and exhibits defining Fiserv's specific technical and security obligations to manufacture a non-existent obligation that Fiserv provide the form of security POLAM now prefers. The plain language of the Agreement (and common sense) preclude POLAM's reading and any suggestion of ambiguity. POLAM's breach of contract claims fail as a matter of law.

POLAM's remaining claims also fail. The Agreement bars POLAM's quasi-contract claims and requested equitable remedies; its trade-secrets claim does not identify a trade secret or any actionable misappropriation; its fraud claim falls short under Rule 9(b), failing to plead a purported misrepresentation, reliance, or any theory not foreclosed by the Agreement; and its UCL claim is deficient under all prongs.

# II. ARGUMENT

## A. Polam Has Failed to Allege a Contractual Provision Breached.

POLAM does not identify a contractual provision requiring the type of security and multi-factor authentication ("MFA") it claims is required. Instead, POLAM clings to its misreading of Sections 3(b) and 4(a) of the Agreement while requesting leave to amend if the Court grants Fiserv's motion. POLAM's subjective belief these provisions create obligations not found anywhere in the Agreement does not state a claim. *See e.g.*, Bodenburg v. Apple Inc., 146 F.4th 761, 768 (9th Cir. 2025).[1]

Recognizing this fatal flaw, POLAM asks the Court to find that the Agreement "plausibly" says what POLAM alleges. It does not, and that is not the standard for

[1] POLAM fails to distinguish *Bodenburg*. There, the court held that, plaintiff's subjective reading did not state a claim where it was unsupported by the plain language of the agreement. The circumstances here are the same.

matters of straightforward contract interpretation to be decided as a matter of law. *See* *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156-58 (2d Cir. 2016). POLAM's unreasonable interpretation does not create ambiguity and cannot prevent dismissal. *Id*; *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1018 (9th Cir. 2012).

1. Section 3(b) is a Confidentiality Provision, Not a Cybersecurity Warranty.

Section 3(b) is a standard confidentiality provision. It imposes reciprocal obligations to "hold as confidential all Information" received from the other party and to "use the same care and discretion to avoid disclosure of Information" that the party uses "with its own similar information that it does not wish disclosed, but in no event less than a reasonable standard of care[.]" (ECF 35-1 at 4-5 § 3(b).) It does not impose, much less discuss, technological or information security obligations, such as MFA.

Undeterred by Section 3's plain language, POLAM contends that, through this generic language, a local credit union and global fortune 500 fintech company agreed to provide one another the exact same security each provides itself. (ECF 50 ("Opp.") at 1, 5.) That result is commercially absurd and would transform the meaning of familiar terms used in NDAs and standard protective orders. POLAM ignores this point.

POLAM's misinterpretation begins by conflating the word "disclosure," which appears in the operative language of Section 3(b), and the word "access," which does not. These words have fundamentally different meanings, as case law interpreting them confirms. (ECF 43-1 ("Mot.") at 8.) POLAM does not seriously contend otherwise. Instead, POLAM argues the words must mean the same thing, and derides Fiserv's authority as dealing with matters of statutory interpretation. (Opp. at 5-6.) That is a distinction without difference. Consistent with the first step of contract interpretation, courts have looked to the "plain language" of these statutes and confirmed that access and disclosure mean different things. *E.g.*, *United States v.*

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

*Nosal*, 676 F.3d 854, 863 (9th Cir. 2012); *Univ. Sports Pub. Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 383 (S.D.N.Y. 2010). In *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, the court rejected what POLAM argues here: that failing to prevent theft of data (*i.e.* unauthorized access) constitutes "disclosure of said information." 19 N.Y.S.3d 850, 858 (N.Y. Sup. Ct. 2015). POLAM dismisses *Abdale* as inapplicable because it is "a data breach case." (Opp. at 5.) But POLAM's entire Complaint is based on the possibility of a data breach (*e.g.*, Compl. ¶¶ 47, 90-102). That *Abdale* involved an actual data breach makes it particularly apposite.[2]

POLAM's construction of Section 3(b) also would eliminate the specific security features and contractual obligations in the Agreement's Schedules and Exhibits, replacing them with a single sentence that does not address security or authentication at all. But specific provisions govern over general ones and contracts should not be read to render terms superfluous. *In re AMR Corp.*, 730 F.3d 88, 98–99 (2d Cir. 2013). POLAM argues its reading creates no such conflict, but that is false. For example, in the Web Signatures Schedule, POLAM had the option to elect "Phone Authentication" or "Knowledge Base Authentication"—two different forms of authentication with different prices. (ECF 44-3, Page ID# 1004-05.) According to POLAM, it is a breach of Section 3(b) for Fiserv to provide either form of contractually-specified authentication if it differs from what Fiserv uses internally,[3] creating a direct and obvious conflict with the Web Signatures Schedule. This is why

[2] POLAM's allegation that Fiserv inadvertently sent POLAM's information to a different credit union client does not salvage this claim. (Compl. ¶ 48.) These allegations have nothing to do with POLAM's theory of breach—that Fiserv failed to provide POLAM the same form of MFA it uses for itself. (*Id.* ¶¶ 46-47.) Indeed, POLAM does not allege that MFA would have prevented the alleged event.

[3] A similar conflict exists between POLAM's interpretation of Section 3(b) and the 2021 Online Banking Amendment (bearing POLAM's DocuSign signature), which allows POLAM to choose between two types of authentication services (Enhanced Authentication and SecureNow).



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

the more specific provisions must control.

POLAM would flip these canons on their head, arguing that Fiserv's interpretation is "absurd" and would render Section 3(b) superfluous. Not true. Fiserv's interpretation gives each provision its precise and intended meaning. Section 3(b) is a mutual non-disclosure agreement governing use and disclosure of confidential information; Section 4(a) requires Fiserv to maintain an information security plan (which it does); and the Schedules and Exhibits define the specific technical and security features for which the parties bargained. Fiserv's construction gives purpose and effect to the Agreement's actual language; POLAM's does not.

2. <u>POLAM Has Not Alleged a Breach of Section 4(a).</u>

Section 4(a) requires Fiserv to implement and maintain an information security plan, provide it to POLAM, and "take appropriate actions to address incidents of unauthorized access" to POLAM's data. (Agreement at 4, § 4(a).) POLAM does not allege that: (i) Fiserv lacks a plan; (ii) the plan is not designed to meet the enumerated objectives; (iii) POLAM did not receive the plan; or (iv) any "unauthorized access" occurred (much less that Fiserv failed to appropriately address any unauthorized access). (*See generally* Compl.)

Instead, POLAM argues that Section 4(a) "plausibly" imposes obligations established by FFIEC and NIST guidance , even though Section 4(a) does not mention or reference FFIEC or NIST standards. POLAM acknowledges as much but nevertheless claims this conspicuous absence is "irrelevant" because "4(a) requires Fiserv's program to meet specific cybersecurity objectives defined under federal law." (Opp. at 7.) Section 4(a), however, says no such thing. Section 4(a) only incorporates by reference the Gramm-Leach-Bliley Act's and Fair Credit Reporting Act's definitions of "customer information" and "consumer reports"; it does not mandate compliance with their objectives or standards, much less adopt guidance from FFIEC or NIST. POLAM suggests that by incorporating certain definitions from two federal statutes, the Agreement incorporates the standards of ***all*** federal law and





TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

guidance of POLAM's choosing. That is not what Section 4(a) says, and POLAM provides no authority for its expansive interpretation. There is none.

Section 4(a) does incorporate security standards from Massachusetts Regulation 201 CMR 17.00. (Agreement § 4(a).) The reference to this standard and omission of any reference to FFIEC and NIST eliminate any doubt that Section 4(a) does not incorporate the latter. *See, e.g.*, *Gillen v. Town of Hempstead Town Bd.*, 96 N.Y.S.3d 492, 497 (N.Y. Sup. Ct. 2019) ("[W]hen one or more things of a class are expressly mentioned others of the same class are excluded.").[4]

In any event, the FFIEC guidance neither incorporates NIST standards nor mandates the specific security features POLAM claims are required. POLAM ignores this too. The 2021 guidance cited in the Complaint, "does not endorse any specific information security framework or standard," or "establish a compliance standard for these laws or impose any new regulatory requirements on financial institutions," and instructs financial institutions to determine their own needs based on "risk assessments, and risk appetites and tolerances."[5] POLAM's attempt to transform *guidance* for "financial institutions" into specific contractual *mandates* for Fiserv (a technology service provider) fails as a matter of law.

In a last ditch effort to survive dismissal, POLAM asserts that its interpretation raises issues of ambiguity. For a contract to be ambiguous, however, it must be susceptible of more than one reasonable interpretation. *Orchard Hill Master Fund Ltd.*, 830 F.3d at 157. POLAM offers "different" interpretations of Section 3(b) and 4(a), but neither is supported by the Agreement's actual language, and neither is reasonable.. Section 3(b) does not impose reciprocal cyber security obligations on the

[4] POLAM fails to explain why NIST and FFIEC standards are not of the same class as this regulation that governs the standards for protection of personal information.

[5] https://www.ffiec.gov/sites/default/files/media/press-releases/2021/authentication-and-access-to-financial-institution-services-and-systems.pdf.



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

parties and Section 4(a) does not incorporate the federal guidance upon which POLAM relies. The Agreement "is not rendered ambiguous" just because POLAM has offered "a different, subjective meaning to one of its terms." *RDF Agent, LLC v. Elec. Red Ventures, LLC*, 227 A.D.3d 424, 427 (N.Y. App. Div. 2024). POLAM's interpretation is unreasonable and fails as a matter of law.

3. POLAM Has Not Stated a Claim Regarding SecureNow.

POLAM argues the current online banking security features it receives breach the Agreement, while simultaneously arguing that an upgrade to the SecureNow features (which POLAM refuses to implement) is also a breach. (Opp. at 9.) [6] POLAM's circular reasoning, and contention that Enhanced Authentication and SecureNow do not satisfy Fiserv's contractual obligations, depends entirely on POLAM's interpretation of Section 3(b) and 4(a), which fails as a matter of law.

4. POLAM'S Other Contract-Related Claims and Remedies Fail.

POLAM asserts a hodgepodge of related claims and equitable remedies. Each fails.

First, POLAM asserts a claim under N.Y. Gen. Oblig. Law § 5-903 because the initial term of the Agreement auto renewed in May 2019. But POLAM executed amendments after May 2019, including the 2022 Amendment that extended the term of the Agreement to 2030. POLAM's voluntary extension of the Agreement negates its autorenewal claim. Further, POLAM's clarification that this claim is based on an alleged autorenewal in ***2019*** confirms this claim is time barred. *See* N.Y. CPLR § 214(2) (three-year limitations period).

Second, POLAM still has not identified a material breach or damages for its audit-related claims. As to the information report, POLAM alleges no harm caused

[6] POLAM's feigned ignorance as to the validity of the 2021 Amendment governing Online Banking and SecureNow is a transparent attempt to delay the inevitable. (Opp. at 10; ECF 50-1 ¶¶ 3-4.) POLAM does not deny document was signed by POLAM.



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

by receipt of Fiserv's information security plan three weeks after the 30-day timeline. Compl. ¶¶ 107-109; Opp. at 19. As to the security audit reports, POLAM believes Fiserv's alleged breach emanates from providing POLAM with a "blanket report" rather than waiting for POLAM's "written request" for the documents. Opp. at 12. That is not a breach, and POLAM does not identify the harm it allegedly suffered.

Third, the Agreement bars POLAM's claims for good faith and fair dealing and unjust enrichment. Fiserv's invoice and service obligations are defined by the Agreement, and thus a good faith and fair dealing claim premised on Fiserv's issuance of invoices is not distinct from the contract claim. Similarly, POLAM's admission that a valid contract exists and governs the parties' relationship, bars its unjust enrichment claim. (Mot. at 14.) POLAM's request for recission cannot save its unjust enrichment claim because that relief fails along with its claims under Section 3(b) and Section 4(a), and could not be awarded in any event because POLAM alleges an adequate remedy at law exists. (Compl. ¶¶ 47, 89.)

Finally, POLAM's request for declaratory judgment fails for two reasons. POLAM has not stated a cognizable claim of breach. And POLAM effectively concedes the claim is not ripe because it has not sought to terminate the Agreement or requested services that would trigger termination and Fiserv has not invoked the exculpatory or limitation of liability provisions. (Opp. at 14.)

### B. POLAM Does Not Plead Trade Secrets or Misappropriation.

POLAM attempts to salvage its DTSA claim by asserting that "compilations" of member data (including generally known information) can qualify as trade secrets (Opp. at 15.) The Complaint, however, makes no allegation that POLAM expended any effort or expense to compile the information it claims as trade secrets, which precludes this theory. *Cf. Rescue 1 Fin., LLC v. Complete Debt Relief LLC*, No. SACV 23-00982-CJC, 2023 WL 6373884 (C.D. Cal. Aug. 24, 2023) (plaintiff alleged it had spent "substantial time, effort, and expense" identifying and compiling information).

POLAM also fails to plead that the information derives economic value from



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

being kept secret. POLAM does not control this information—its members do. *See* *Medike Int'l Corp. v. Giller*, No. 23-cv-8939, 2024 WL 139575, at *4 (S.D.N.Y. Jan. 12, 2024). POLAM does not explain how it can monetize the "secrecy" of its members' names, addresses, account numbers, or financial histories when it does not control whether or to what extent that information remains secret. (Compl., ¶¶ 90-102, 159-68.) Whatever "value" this information has belongs to POLAM's members, not POLAM. As to the members, this information derives value when it is shared to conduct transactions or secure credit, not because it can be kept secret. (Mot. at 14-15.)[7]

POLAM's misappropriation theories are equally defective. POLAM claims that "contractual acquisition can constitute misappropriation where misrepresentations exist" (Opp. at 16) but fails to allege any pre-2014 misrepresentations by Fiserv that could constitute an improper acquisition of POLAM's alleged trade secrets. To this day, POLAM permits (and needs) Fiserv to hold and use that information each day to run the credit union. That is lawful acquisition in a commercial relationship, and, as explained below, POLAM has not plausibly alleged a misrepresentation in any case.[8] Finally, while POLAM glibly

---

[7] POLAM's new argument that its "competitive position" depends on member trust (Opp. at 15-16) is not alleged in the Complaint. *Kobayashi v. McMullin*, No. 2:19-cv-06591-SSS, 2023 WL 3493991, at *28 (C.D. Cal. Mar. 2, 2023) ("Court cannot consider new factual allegations asserted for the first time in an Opposition brief.").

[8] See *Giostar Therapy, LLC v. Bioscience Americas LLC*, No. CV-18-02788-PHX-SRB, 2019 WL 7841723, at *3 (D. Ariz. Apr. 22, 2019) (plaintiff failed to plead improper acquisition where there were insufficient nonconclusory misrepresentation allegations); *cf. Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1026 (E.D. Cal. 2011) (no improper acquisition where parties authorized to receive each other's trade secret information). The other cases POLAM cites are inapposite as they either focus on improper use of trade secrets (*Pray, Inc. v. Christian Care Ministry, Inc.*, No. 2:23-cv-10660-SB-JC, 2024 WL 3509781, at *10 (C.D. Cal. June 7, 2024)), or do not involve lawful transfer of information under a contract




TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

states that the Complaint alleges "improper disclosure or use" (Opp. at 16), POLAM does not allege any instance of improper disclosure or use of the alleged trade secrets.[9]

### C. <u>POLAM's Opposition Fails To Cure Its Defective Fraud Claim.</u>

POLAM still has not identified any plausible misrepresentation, justifiable reliance, or resulting damages as required to plead fraud.

POLAM's Opposition does not identify an actionable representation of a specific, ascertainable fact about services ***it receives under the Agreement***. *See* Mot. at 18. Notably, while the Complaint alleges misrepresentations in five documents (Compl. ¶¶ 26-30, 71-76, 79-83; Mot. at 18), POLAM now relies only on two of them—the undated *Standardized Information Gathering Questionnaire* and the *Fiserv Cybersecurity Fact Sheet 2025*. (Compl. ¶¶ 75-76, 77-78; Opp. at 18.) But POLAM fails to explain how general statements that Fiserv "utilizes" MFA (which POLAM concedes is true, *id*., ¶ 5), and that Fiserv's 2025 Global Cybersecurity and Technology Management Policy is "based on authoritative sources that include regulatory and industry publications," represent specific, ascertainable facts about the services provided to POLAM under the Agreement or its amendments. Neither document describes a specific security product or configuration POLAM contracted for; instead, they describe the overall design and objectives of Fiserv's cybersecurity practices.

Nor has POLAM satisfied Rule 9(b)'s pleading requirements. POLAM has not adequately alleged the "who," "when," or "how" of the alleged misrepresentations.

---

(*Gordon Grado M.D., Inc. v. Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 810–11 (D. Ariz. 2022)).

[9] Paragraph 48 states that "Fiserv disclosed POLAM's extraordinarily sensitive confidential information to other credit unions" (Compl., ¶ 48), but the Complaint does not allege that the information allegedly disclosed was the same information POLAM alleges constitute its "trade secrets." (*Id*. ¶ 159.) POLAM apparently believes that all of its information is a "trade secret."



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

POLAM's Opposition vaguely reiterates it received the alleged misstatements "during the parties' relationship" (Opp. at 18), but other than identifying dates of some of the purportedly fraudulent documents, it fails to allege when POLAM actually received them, who at POLAM reviewed them, and how the documents informed POLAM's understanding of the services. These bare allegations fail to plead fraud with the requisite particularity. *See, e.g.*, *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978-79 (N.D. Cal. 2016) (dismissing fraud claims where plaintiffs failed to specify when they saw fraudulent marketing materials). POLAM's cited authority is distinguishable. *See Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1122-23 (S.D. Cal. 2021) (detailed allegations about dates and salesperson's misrepresentations about type of health plan and coverages plaintiff would receive).

The Agreement also undermines POLAM's assertions about reliance and resulting damages. POLAM does not meaningfully respond to Fiserv's argument that the Agreement's terms govern and preclude reliance on extrinsic documents. Indeed, POLAM cannot plausibly plead reliance on an alleged representation inconsistent with the parties' integrated agreement.[10] *See, e.g.*, *BASF Corp. v. Platinum Collision Centers, Inc.*, 2019 WL 6317776, at *6 (C.D. Cal. July 3, 2019) (no justifiable reliance on alleged misrepresentations contradicting integrated contract); *Sussex Fin. Enters., Inc. v. Bayerische Hypo-Und Vereinsbank AG*, 460 F. App'x 709 (9th Cir. 2011) (no reasonable reliance, as a matter of law, on alleged promise inconsistent with contract's

---

[10] POLAM's authorities are not persuasive (Opp. at 20 n.7). *See Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1182-83 (2013) (not addressing effect of integration clause on reliance element for fraud); *625 3rd St. Assocs., L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040, 1051-52 (N.D. Cal. 2009) (same); *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985, 996-97 (1995) (not addressing extrinsic statement contradicting contract). And *Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC* is distinguishable. The complaint alleged that a specific email from Fiserv to the plaintiff misrepresented a particular website satisfied certain security requirements. 472 F. Supp. 3d 142, 166 (W.D. Pa. 2020). POLAM has made no similar allegations.

terms). Similarly, POLAM's assertion of a causal link between the alleged misrepresentations and damages, without supporting authority, is not plausible where the Agreement already informed POLAM of the products technical features. For all these reasons, POLAM's fraud claim should be dismissed.

**D. <u>POLAM Cannot State A UCL Claim.</u>**

POLAM's Opposition does not save its UCL claim under any prong. *First*, as POLAM acknowledges, to satisfy the "unlawful" prong, POLAM must allege how Fiserv's conduct violated the predicate statute. (Opp. at 23.) But the sole statutory authority POLAM cites, Cal. Civ. Code § 1798.81.5, simply requires "reasonable security procedures and practices." Nothing in the statute requires the particular security services POLAM now demands, but never contracted for. In fact, POLAM concedes Fiserv does use "authentication practices" and does not explain how § 1798.81.5 requires anything more, much less that Fiserv provide POLAM the same authentication measures it uses for its own information. (Opp. at 22; Compl. ¶ 5.) Nor are POLAM's authorities instructive, as those cases involved unauthorized disclosure of patient health information in violation of anti-disclosure and privacy laws. *See <u>In re Anthem, Inc. Data Breach Litig.</u>*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (plaintiff patients alleged defendant healthcare company disclosed their private health information contrary to laws prohibiting such disclosure); *<u>In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig</u>*., 613 F. Supp. 3d 1284, 1303 (S.D. Cal. 2020) (customers of medical supplier plausibly pled facts demonstrating their medical information was viewed by unauthorized third party in violation of predicate statutes). Here, the statute merely sets forth a general requirement and does not require the specific security features POLAM demands.

*Second*, POLAM's "unfair" prong claim is not viable where POLAM cannot meet the tethering or balancing test. The tethering test is not met because, as explained above, POLAM fails to allege a violation under the alleged predicate statute. *<u>Nazemi v. Specialized Loan Servicing, LLC,</u>* 637 F. Supp. 3d 856, 864 (C.D. Cal. 2022)



TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

(tethering test not met where plaintiff failed to allege facts showing how defendants' conduct violated constitutional, statutory, or regulatory law). POLAM's reliance on *Smallman* is also misplaced, as the court did not apply the tethering test. *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1203 (D. Nev. 2022) (ruling "based on the balancing test alone"). The balancing test is also not met. POLAM asserts, without citation to authority, that it is, but fails to address authority cited in the Motion demonstrating otherwise. (*See* Mot. at 24-25.) Nowhere does POLAM allege Fiserv gains any benefit from its alleged failure to use certain security practices, nor that Fiserv's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. The "unfair" claim thus fails.

*Finally*, POLAM's "fraudulent" prong claim likewise fails for the same reasons as its fraud claim. (*See supra* section II.C.) Moreover, POLAM's argument that financial institutions could reasonably be misled is undermined by the fact that the security services Fiserv provides to a particular financial institution are governed by a detailed contract, not general statements about Fiserv's own cybersecurity practices.

## III. CONCLUSION

For the reasons discussed herein and in the Motion and supporting papers, the Court should dismiss with prejudice POLAM's Complaint in its entirety.

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

Dated: June 8, 2026

TROUTMAN PEPPER LOCKE LLP

By: */s/ Steven D. Allison*

Steven D. Allison
Christy A. Markos
Lynda B. Nguyen
Jesse L. Byam-Katzman (admitted *pro hac vice*)

Attorneys for Defendants
FISERV SOLUTIONS, LLC F/K/A FISERV SOLUTIONS, INC.; and FISERV, INC.

Troutman Pepper Locke LLP
100 Spectrum Center Drive
Suite 1500
Irvine, CA 92618

TROUTMAN PEPPER LOCKE LLP
100 SPECTRUM CENTER DRIVE
SUITE 1500
IRVINE, CA 92618

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for FISERV SOLUTIONS, LLC F/K/A FISERV SOLUTIONS, INC.; and FISERV, INC. certifies that this brief contains 3,800 words, which complies with the word limit of L.R. 11-6.1 and 12 pages, which complies with the page limit set by the Court's standing order dated March 12, 2026.

Dated: June 8, 2026

TROUTMAN PEPPER LOCKE LLP

By: *_/s/ Steven D. Allison_*
Steven D. Allison